**Richard A. Ferreira**
**18349 Robscott Ave.**
**Hayward, CA 94541**
**Telephone: (510) 706-5118**

**In Pro Per**

FILED
AUG 2 2 2008
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Richard A. Ferreira,

Plaintiff,

vs.

CHABOT COLLEGE; CHABOT-LOS POSITAS COMMUNITY COLLEGE DISTRICT; KATHERYN LINZMEYER, MELINDA MATSUDA, DR. ROBERT CARLSON; LORENZO LEGASPI, ANITA MORRIS AND DOES 1-25,

Defendant

**No.: CV08-~~2254~~ 2264-CW**

**PLANTIFF'S CASE MANAGEMENT CONFERENCE STATEMENT**

Plaintiff submits the following Case Management Statement pursuant to Northern District of California Local Rule 16-9 as mandated by the Court's August 12, 2008 Order Settling Initial Case Management Conference and to confer in accordance with the ADR Process.

1. JURISDICTION AND SERVICE

In accordance to the Defendant's motion this Court has jurisdiction of this action under federal question due to the Plaintiff's Complaint alleges three independent and separate claims arising solely under federal law in the Sixth Cause of Action, the Seventh Cause of Action, and the Eighth Cause of Action. Alleged violations of 42 U.S.C. §1983, 42 U.S.C. §1985(3) the first fourth, fifth, ninth, thirteenth and fourteenth amendments to the U.S. Constitution, and Title IX, Education Amendments of 1972, 20 U.S.C. §§1681, et seq.

2. FACTS

Plaintiff worked at Chabot College ("Chabot") in a temporary position from approximately 1990 through 1992, at which he was hired in various (5) on-call temporary positions. Plaintiff's employment status ended on good terms. After some time, the Plaintiff returned to work for Chabot in two temporary positions from April, 1999 through July, 2000 in which he received an excellent performance review. In July, 2000 Plaintiff was hired by Chabot as a Student Services Specialist II, to work in the Financial Aid Office. Prior to the Director of Financial Aid's departure the supervisor was please with the Plaintiff's performance and provided the Plaintiff with a good performance review in closing stating that with additional training the Plaintiff would performance at an "Excellent" level.

Prior to this time the Plaintiff performed well above expectations and did not disclosing his mental disability or sexual orientation to any of his peers and got along very well. However, a fellow co-worker Mr. James Sullivan became aware of the Plaintiff's sexual orientation through a mutual personal acquaintance who had disclosed to the Plaintiff also that he knew Mr. Sullivan. Plaintiff was not in any way interested in any personal or sexual involvement with Mr. Sullivan, however, experienced from the beginning of his employment in the Financial Aid office invitations to drinks, open requests to meet after work hours, lewd comments, and sexual innuendos. Plaintiff declined all requests from Mr. Sullivan. Plaintiff inadvertently, while making arrangements with others friends encountered Mr. Sullivan in a local bar/tavern and found him allegedly intoxicated. Mr. Sullivan approach the Plaintiff and allegedly attempted to sexually provoked Plaintiff in a physical manner to which Mr. Sullivan had to be forced to remove his hands and Plaintiff clearly rejected said sexual advances.

Plaintiff's immediate supervisor was not available because the Director of Fiancial Aid position was vacant, therefore, the office reported directly to the Vice-President of Student Services, Defendant, Melinda Matsuda. Plaintiff was unaware, at that time, that Defendant, Melinda Matsuda was involved in a concealed sexually relationship with Mr. Sullivan. Plaintiff requested a meeting with Defendant, Melinda

Matsuda, through his office and of said alleged violations and so doing so, to inform the Defendant, Melinda Matsuda, but before he could discuss his concerns he was immediately retaliated with a negative performance memorandum by Defendant, Melinda Matsuda. Plaintiff was adversely affected by said action and informed Defendant, Melinda Matsuda of alleged acts of Mr. Sullivan. Said Defendant destroyed the negative performance memorandum and, in part if not in whole, placed into motion the plan of action that would terminate the Plaintiff on the basis of poor performance and that the sexual harassment investigation would be completed by Defendant, Melinda Matsuda.

Plaintiff continued to follow the instructions and direction of his superiors to the best of his abilities which included changing responsibilities of who would complete the investigation unaware of the initial motive of the Defendant, Melinda Matsuda and his superiors. Plaintiff only requested remedy at that time was for the harassment to stop on several occasions and for Defendant's to take action to prevent further hostilities from Mr. Sullivan in his office and any other discrimination. Plaintiff repetitively requested action to be taken by Defendants, Melinda Matsuda and it fell on deaf ears with no action was taken until an email was sent to Defendants, Human Resources Director, Sharon Trethan. Whereupon, Plaintiff was transferred to another office to temporarily to resolve any concerns by Defendant, Melinda Matsuda.

Defendants, Melinda Matsuda at first stated that she was looking to make the transfer permanent and that after the hiring a Director of Financial Aid and that individual who would complete the sexual harassment complaint investigation filed by the Plaintiff email request to have someone else conduct it due to the bias statements the Defendant, Melinda Matsuda made. Instead, Plaintiff was ordered to return working in the Financial Aid office and said that he would have to learn to work together with Mr. Sullivan.

Plaintiff underwent denied reasonable accommodation requests and later believed he was being discriminated against because he was also force to disclose his

sexual orientation to Defendant, Melinda Matsuda under the guise a necessity to conduct an investigation of alleged sexual harassment to address the matter.

Plaintiff was transferred back to the Financial Aid office was informed by Defendant Melinda Matsuda to the Plaintiff that there was no grounds for his sexual harassment complaint and that the Plaintiff would return to the Financial Aid office and would be forced to continue working in the same office as Mr. Sullivan. Plaintiff strongly objected, however, reluctantly returned to the Financial Aid office after voicing that he would take this matter outside Chabot College to have resolved. Shortly afterwards, without admitting any wrongdoing, Mr. James Sullivan was transferred out of the Financial Aid office to the Admissions and Records office.

Plaintiff experience continuing hostility and reported it to said Defendants regarding Mr. James Sullivan continuing efforts to create a hostile work environment unaware of the Defendant's relationships and requested Defendants to take more appropriate steps to stop any further discrimination or harassment. Defendants took no further action on the matter regarding Mr. Sullivan to the Plaintiffs knowledge and placed into effect instead a plan of action to terminated Plaintiff after any statue of limitation for filing complaints with the Department of Fair Employment was exhausted.

Plaintiff was denied reasonable accommodation requests for his mental disability affected by his harassment and discrimination, including but not limited to transferring to other positions to move away from the individual(s) creating the hostile environment to Plaintiffs knowledge at that time and became victim to intrusive mental fitness for duty examination demand by the Defendants. Plaintiff was unaware that Defendants Melinda Matsuda, the Financial Aid Director, Katheryn Linzmeyer, the College President, Dr. Robert Carlson were in part acting, independently, if not as a whole, partaking in creating the hostile work environment and retaliation and discrimination.

Plaintiff informed the Defendants of said continued acts in written form to be the recipient of harassment, retaliation, discrimination and such barriers which created a hostile work environment as the actions of said Complaint for Damages during employment, and that of the acts of each agent, servant and employee ratified by each

of the remaining Defendants who was hired, and knew, or should have known, that hiring each other Defendant created a foreseeable risk of injury, and that with said knowledge, each Defendant, if not intentionally, did negligently and carelessly hire and/or failed to closely supervise each other Defendant in the course and scope of their agency and employment. Each and every act, and omission to act, as alleged in this paragraph caused injury to Plaintiff, as further alleged herein.

Each and every wrongful, injurious, negligent, willful, discriminatory, harassing act, and failure to act, by the Defendants, were not a normal incident of employment or the basis on negative employment performance and were outside the scope of the employment bargain.

Plaintiff was issued two annual negative performance evaluations but did not receive them in a timely manner, both annual 2004 and 2005 evaluation were received in 2005. Plaintiff work diligently to maintain his position at Chabot College until finally becoming aware of the email sent by Defendants, Anita Morris, (the new) Human Resources Director, on September 16, 2005 in which correspondence between Plaintiff and Defendants Katheryn Linzmeyer was being copied forwarded to Defendants, Anita Morris and copied to Laura Schulkin of Leibert, Casssidy and Whitmore, a law firm. Immediately on September, 20, 2005, Defendants placed the Plaintiff on paid administrative leave pending an alleged investigation to which the intent to terminate papers were served. Defendants informed Plaintiff that his termination was based on alleged gross negligence and integrity. Subsequent, the Skelly Hearing was scheduled when Defendants attempted to have the Plaintiff terminated, however, prior to the termination date.

Up until this point, and after March, 2006, Plaintiff remained unaware of Defendants, Melinda Matsuda and Mr. James Sullivan involvement, but became aware of the possibility. Upon said discovery after Plaintiff was on paid leave on or around July, 2006 Plaintiff became aware of factual information that would support the discovery of the relationship between Defendants, Melinda Matsuda and Mr. James Sullivan and an additional, if not the, possible motive behind Chabot's initial

discriminatory and retaliation acts. Although the motive for Defendants, Melinda Matsuda action is based on her personal involvement, the fact remains that she, as well as, all Defendants acted in part and/or as a whole to discriminate against the Plaintiff by creating a hostile work environment and retaliation based on the Plaintiffs sexual orientation and disability and protective acts.

Factual Disputes:

Whether Defendants acted in accordance, and did not, discrimination.

Whether Defendants acted in accordance, and did not harass the Plaintiff.

Whether Defendants, in part or as a whole, created a hostile work environment.

Whether Defendants, in part or as a whole, in retaliation for Plaintiff filing protected acts.

Whether Defendants failed to provide reasonable accommodation.

Whether Defendants acted in accordance when denying Plaintiff's request(s) for transfer(s).

Whether Defendants prevented Plaintiff from presenting appropriate evidence at any time.

Whether Defendants denied Plaintiff's request(s) for transfer(s).

Whether Defendants acted in accordance in terminating the Plaintiff.

Whether Defendants did not discriminate in terminating the Plaintiff.

3. LEGAL ISSUES

Plaintiff maintains that all allegations of the Complaint for Damages are factual. Plaintiff maintains that Defendants discriminated, retaliated, violated the California or U.S. Constitutions or Amendments thereto in their treatment, Defendants violated Plaintiff's civil rights, Plaintiff was damaged by the conduct of the Defendants. Plaintiff maintains that he exhausted his administrative and/or judicial remedies and found no other recourse than to file a lawsuit. Plaintiff maintains that he was terminated for illegitimate and/or discriminatory reasons and denies the Defendants alleged poor job performance and conduct. Furthermore, Plaintiff maintains that conduct of the Defendants was severe and pervasive, discrimination, harassment and/or retaliation

constituted a continuing violation, Defendants failed to provide all procedural and/or substantive due process during employment and rights during the Skelly hearing and any appeals.

4. MOTIONS

There are no motions currently pending at this time.

5. AMENDMENT OF PLEADINGS

Plaintiff does not anticipate amending his pleading at this time but would like to retain the right upon discovery of any relative information that was not accessible previously if possible.

6. EVIDENCE PRESERVATION

Plaintiff has taken all reasonable steps to comply with the FRCP 26 and is taking steps to notify any and all names and identified as potential witnesses.

7. DISCLOSURES

Plaintiff will act in accordance to the Case Management Conference mandated Court August 12, 2008 Order and ADR Process to disclose any and all including (1) a list of witnesses currently know to Plaintiff that he believes will have discoverable information to support his claim and (2) a description by category of those documents Plaintiff has in his possession, or control and may use to support his claim.

8. DISCOVERY

Plaintiff was not able to meet and confer with the Defendant, however, will set forth a plan in accordance to the Case Management Conference Court August 12, 2008 Order and ADR Process. At this time, changes in initial disclosure requirements are not anticipated, however, there are subjects on which Discovery may be needed. Included but not limited to:

Documents maintained in the Financial Director's office.

Any and all documents in reference to Plaintiff including the Personnel File.

Any and all correspondence between Defendants on paper and electronic email.

Financial Aid previously requested documents for the Skelly Meeting.

Financial Aid Audit Responses.

Copy of the sexual harassment report submitted to the state (if any).

CLASS ACTION

This claim is not a class action.

9. RELATED CASES

There are no related pending or otherwise cases before this Court to the Plaintiff's knowledge.

10. RELIEF

Plaintiff proposes said illegal employment practices, as set forth herein and as subject to proof, have caused and will continue to cause the Plaintiff to suffer damages, injuries and losses, including but not limited to, loss of earnings, cost of legal actions and attorneys fees, mental and emotional pain, humiliation, mental anguish, loss of enjoyment of life and emotional distress and therefore should not be limited actual wage loss or subject to reduction for plaintiff's failure to mitigate.

11. SETTLEMENT AND ADR

Plaintiff anticipates a need to conduct discovery, including without limitation the deposition of Defendants and key witnesses and will act in accordance with the Case Management Conference on August 12, 2008 Order.

12. CONSENT TO MAGISTRATE JUDGE FOR ALL PURPOSES

Plaintiff consents to and appreciated the Case Management Conference on August 12, 2008 Order to have a magistrate judge conduct further proceedings.

13. OTHER REFERENCES

Plaintiff does not have anything to include at this time.

14. NARROWING OF ISSUES

Plaintiff does not believe that it can narrow by agreement or motion based to expedite the presentation of evidence.

15. EXPEDITED SCHEDULE

Plaintiff does not believe that this case can be expedited.

16. SCHEDULEING

Plaintiff will act in accordance with the Case Management Conference on August 12, 2008 Order in regards to the schedule Trail and Pre-Trail.

17. TRIAL

Plaintiff requests a jury trial and will act in accordance with the Case Management Conference on August 12, 2008 Order in regards to the schedule Trail and Pre-Trail.

18. DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PERSONS

Plaintiff does not know and party or entities to have either a financial interest in the subject matter in controversy or in a party to the proceeding or any other kind of interest that could be substantially affected by the outcome of the proceeding.

19. OTHER MATTERS

Plaintiff does not know any matters that may facilitate the just, speedy and inexpensive disposition of this case.

Dated this August 16, 2008

Richard A. Ferreira
18349 Robscott Ave.
Hayward, CA 94541
Telephone (510) 706-5118

In Pro Per

RICHARD FERREIRA
18349 ROBSCOTT AVE
HAYWARD, CA 94541




HONORABLE CLAUDIA WILKEN
ALTERNATIVE DISPUTE RESOLUTION PROGRAM
UNITED STATES DISTRICT COURT
450 Golden Gate Ave. 16th Floor
San Francisco, CA 94102